IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| STAT LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13CV762-HEH |
| | ) | |
| BEARD HEAD, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
### (Denying in Part and Granting in Part Plaintiff's Motion to Dismiss)

This is in essence a trademark infringement action involving two standard character marks utilized to brand and market products, primarily knitted beards.

The case is before the Court on Plaintiff Stat, Ltd.'s ("Beardo" or "Stat Ltd") Motion to Dismiss each of Defendant Beard Head, Inc.'s ("Beard Head") remaining counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion," ECF No. 14), filed on February 7, 2014. The parties have fully briefed the issue. The Court will dispense with oral argument because it would not aid in the decisional process. For the reasons set forth herein, the Motion will be denied in part and granted in part.

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed this action on November 13, 2013 (Complaint, ECF No. 1), alleging four causes of action: (1) Design Patent Infringement arising under the patent laws of the

United States, 35 U.S.C. § 271(a); (2) Federal Unfair Competition and Trade Dress Infringement for Product Packaging under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) Federal Unfair Competition and Trade Dress Infringement for Product Design under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) Common Law Trade Dress Infringement and Unfair Competition for both Product Packaging and Product Design. Beard Head filed its Answer (Answer, ECF No. 11) on January 17, 2014, raising four counterclaims: (1) Antitrust violations under Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) Federal Trademark Infringement under Section 32(1) of the Lanham Act, 15 U.S.C. 1114(1); (3) Federal Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) Federal Cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C 1125(d)(1)(A). The Court has voluntarily dismissed both Beard Head's counterclaim for antitrust violations (ECF No. 43) and Beardo's claim for patent infringement (ECF No. 55).

### B. Factual Background

Beard Head was founded in 2007. (Answer at 14.) Beard Head owns a registered mark in the words "BEARD HEAD" and rights to its exclusive use for clothing, namely novelty headgear, novelty hats, and caps. (*Id.*) Beard Head sought protection from the Patent and Trademark Office ("PTO") for the mark on April 27, 2009, successfully obtaining registration on November 16, 2010. (*Id.*, Ex. A thereto, "Certificate of Registration") Notably, the registration explicitly disclaims both the word "Head" apart from the complete trademark and any particular font, style, size, or color. (*Id.*) Beard Head argues that as a result of using the mark to, *inter alia*, advertise, promote, and

identify its products, its sponsored activities, and communications on its website "beardhead.com" and other media, the mark has achieved considerable recognition thereby becoming an asset of substantial value to Beard Head. (*Id.* at 14–15.)

Beard Head alleges that Beardo through its use of the website "beardowear.com" and the name "Beardo," while being fully aware of Beard Head's mark and its goodwill, has depended on such recognition to divert business away from Beard Head by creating a false association between their respective products. (*Id.* at 15.) Beard Head alleges that Stat Ltd's use of the name "Beardo" and website "beardowear.com" has caused consumer confusion between their products.[1] (*Id.* at 16).

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) are reviewed under the now familiar standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right

---

[1] To illustrate such confusion, Beard Head notes a youtube.com comment on a video entitled "Beard Head Beardo Hat" in which the customer calls the product a "[p]iece of trash" and "WASTE OF40!!!" Beard Head alleges that the product "appears" to actually be made by Beardo rather than Beard Head. (*Id.* at 17.)

to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

### A. Count II: Trademark Infringement

To successfully state a claim for trademark infringement, Beard Head must demonstrate (1) that it owns a valid, protectable trademark, and (2) "the defendant's use, of a 'reproduction, counterfeit, copy, or colorable imitation' of that mark, [in commerce], creates a likelihood of confusion. *See George & Co., LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (quoting 15 U.S.C. § 1114(1)(a)); *see also Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012) (citation omitted).

A certificate of registration from the Patent and Trademark Office ("PTO") is "prima facie evidence of the validity of the registered mark." *OBX–Stock, Inc. v. Bicast, Inc.*, 558 F.3d 334, 339 (4th Cir. 2009). As Beard Head attached the Certificate of Registration received from the PTO to its Answer, the Court acknowledges that it owns a valid trademark for the product at issue. The protection a mark is given, however, is

directly related to the mark's distinctiveness.[2] *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 523 (4th Cir. 2002). Although Beard Head does not address the distinctiveness of its mark, a certificate of registration from the PTO is prima facie evidence that the mark is not generic in the eyes of the relevant public. *Retail Services, Inc. v. Freebies Publishing*, 364 F.3d 535, 542 (4th Cir. 2004). Because the extent of the protection afforded to Beard Head is a factually oriented analysis of the mark's distinctiveness, it is not appropriately settled on a motion to dismiss which is confined to the sufficiency of the complaint.

Like the issue of distinctiveness, likelihood of confusion between marks is a factual issue dependent on the circumstances of each case and is ill-suited for resolution on a motion to dismiss.[3] *See Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997). Since the Answer states a plausible claim, Beard Head's trademark infringement claim survives Rule 12(b)(6).

## B. Count III: Unfair Competition

To state a claim for unfair competition, Beard Head must demonstrate that it has a valid trademark and that the defendant's use of a colorable imitation is likely to cause

---

[2] The Court must determine whether Beard Head's mark is (1) generic, (2) descriptive, (3) suggestive or (4) arbitrary or fanciful. *U.S. Search.com, Inc.*, 300 F.3d at 523 (citing *Perini Corp. v. Perini Construction, Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)). The Fourth Circuit's distinctiveness analysis in *Sara Lee* is emblematic of the fact intensive nature of the inquiry. *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 463–64 (4th Cir. 1996) (delineating the factual nature of determining a mark's distinctiveness).

[3] Indeed, the Fourth Circuit has articulated nine factors for courts to consider: (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public. *See George & Co., LLC*, 575 F.3d 383 at 393 (citations omitted).

confusion among customers. *Ray Communs., Inc. v. Clear Channel Communs., Inc.*, 673 F.3d 294, 300 (4th Cir. 2012) (citations omitted).

In contrast to Beard Head's infringement claim, its federal unfair competition claim is premised upon a common law right to the mark BEARD HEAD. The only factual contention supporting the claim of a common law right to the mark is the continuous use of the mark since April 29, 2009. (Answer at 18.) It is well-settled that "[a]t common law, trademark ownership is acquired by actual use of the mark *in a given market*." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 269 (4th Cir. 2003) (emphasis added) (citing *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918)). That is, the geographic scope of trademark protection is limited "to the locality where the mark is used and to the area of probable expansion." *Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1282 (4th Cir. 1987) (citation omitted).

Even viewed in the light most favorable to Beard Head, its counterclaim does not specify the geographic boundaries of its common law claim to the trademark. This element is critical to a viable claim. Alleging the right to a boundless common law mark through continuous use since April 29, 2009 is simply insufficient without some delineation of its territorial scope. Beard Head's stated intention of bolstering its claim at a later stage fails to meet the requirement of Rule 12(b)(6). (Def. Mem. Opp. Pl.'s Mot. to Dismiss, 8, ECF No. 16). Since Beard Head's counterclaim fails to plead an adequate factual basis for a common law mark, a prerequisite to an actionable unfair competition claim, Count III will be dismissed.

## C. Count IV: Anticybersquatting

The ACPA creates a cause of action for cybersquatting against anyone who registers, traffics in, or uses a domain name that is identical or confusingly similar to a trademark with the bad faith intent to profit from the good will associated with the trademark. *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 383 (4th Cir. 2003) (citing 15 U.S.C. § 1125(d)(1)(A)).

Accordingly, to state a claim for an ACPA violation, Beard Head must demonstrate that "(1) [Beardo] had a bad faith intent to profit from using the [beardowear.com] domain name, and (2) that the ... domain name is identical or confusingly similar to, or dilutive of, the distinctive and famous [Beard Head] Mark." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001) (citing 15 U.S.C. § 1125(d)(1)(A)); *see also Newport News Holding Corp. v. Virtual Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011). Although the ACPA directs courts to consider nine statutory factors when determining bad faith intent, "[t]he ACPA allows a court to view the totality of the circumstances in making the bad faith determination." *Newport News*, 650 F.3d at 435 (quoting *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270 (4th Cir. 2001)). In determining whether a mark is distinctive and famous, courts look to a number of factors, including the degree of public recognition of the mark." *Domain Names Clearing Co v. F.C.F. Inc.*, 16 F. App'x 108, 112 (4th Cir. 2001) (citing 15 U.S.C. § 1125(c)(1)).

Beard Head's counterclaim sufficiently states a claim for violations of the ACPA by alleging that Beardo maintains a website confusingly similar to the Beard Head mark

with bad faith intent to profit therefrom.  The Court's determination of Beardo's bad faith intent and the distinctiveness or famousness of the Beard Head mark are inherently factual issues and require a development of a more complete record.  While skeletal, the claim is adequate to pass 12(b)(6) review.  Accordingly, the Motion will be denied with respect to Beard Head's cybersquatting claim.

## IV. CONCLUSION

Based on the foregoing analysis, the Motion to Dismiss will be denied in part and granted in part.  With respect to Beard Head's trademark infringement and cybersquatting claim, the Motion will be denied.  Accordingly, Beard Head will be allowed to proceed with these claims.  The Motion, however, will be granted with respect to Beard Head's unfair competition claim, which will be dismissed without prejudice.

Moreover, pursuant to this Court's Order voluntarily dismissing Beardo's patent infringement claim, Beard Head's motions for summary judgment and memorandum in support (ECF Nos. 47, 51, 52) will be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Oct. 3 2014
Richmond, Virginia

8