IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| STAT LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:13CV762-HEH |
| ) | |
| BEARD HEAD, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Denying Defendants' Motion to Dismiss)

What began as primarily a patent infringement action is now, in essence, a trademark and trade dress infringement action involving parties in the business of marketing and selling clothing products, primarily knitted beards.

The case is before the Court on the Beard Head Defendants' ("Defendants") Motion for Judgment on the Pleadings as to each of Plaintiff Stat Ltd's ("Plaintiff") remaining claims pursuant to Federal Rule of Civil Procedure 12(c) (Motion," ECF No. 65), filed on October 1, 2014. The pertinent issues have been fully briefed by the parties. The Court will dispense with oral argument because it would not aid in the decisional process. For the reasons set forth herein, the Motion will be denied.

### I. BACKGROUND

*A. Procedural Background*

Plaintiff filed this action on November 13, 2013 (Complaint, ECF No. 1), alleging four causes of action: (1) Design Patent Infringement arising under the patent laws of the

United States, 35 U.S.C. § 271(a); (2) Federal Unfair Competition and Trade Dress Infringement for Product Packaging under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) Federal Unfair Competition and Trade Dress Infringement for Product Design under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) Common Law Trade Dress Infringement and Unfair Competition for both Product Packaging and Product Design. Defendants filed their Answer (Answer, ECF No. 11) on January 17, 2014, raising four counterclaims: (1) Antitrust violations under Section 2 of the Sherman Act, 15 U.S.C. § 2; (2) Federal Trademark Infringement under Section 32(1) of the Lanham Act, 15 U.S.C. 1114(1); (3) Federal Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) Federal Cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C 1125(d)(1)(A). The Court has voluntarily dismissed both Defendants' counterclaim for antitrust violations (ECF No. 43) and Plaintiff's claim for patent infringement (ECF No. 55). The Court also granted, in part, Plaintiff's motion to dismiss (ECF No. 68) removing the Defendants' unfair competition claim.

### B. Factual Background

Plaintiff designs and sells apparel, including an array of "Beard Hats," which are knit caps with an attached or an attachable face mask. (Compl. at ¶ 14.) In August 2011, Plaintiff sought a design patent for the Beard Hat design. The Patent and Trademark Office issued the Design Patent No. D692,186 in October 2013. (Compl., Ex. A thereto.) To identify their products, Plaintiff explains that they invested significant time, effort, and money to create a "new and unique trade dress." (*Id.* at ¶ 19.) This trade dress,

2

Plaintiff avers, is encompassed by the packaging and design of the combined ski facemask and hat products. (*Id.*) As a result of these efforts, Plaintiff contends that this trade dress has become well known to consumers, as consumers identify the design and packaging of the combined facemask and hat as Plaintiff's products. (Compl. at ¶ 20.) To demonstrate the product design's recognition, Plaintiff points to both the showcasing of their product and trade dress in a number of purportedly well-known media outlets, and the company's Facebook page's 165,000 "likes." (*Id.* at ¶ 21.) Plaintiff argues that Defendants' use of a substantially similar design has led to confusion as to the origin of Plaintiff's products, as Plaintiff has received correspondence from consumers and retailers regarding products believed to be Plaintiff's, which were in fact produced by Defendants. (*Id.* at ¶ 42.) To bolster their claim of infringement, Plaintiff argues that David Stankunas ("Stankunas"), named as a defendant in this case, individually and on behalf of the Defendants responded to an inquiry about the similarity of Plaintiff and Defendants' packaging at a trade show in Las Vegas by noting that Defendants copied Plaintiff's packaging in 2013. (*Id.* at ¶ 39.)

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) utilizes the same standard as a motion made pursuant to Rule 12(b)(6). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). In considering a motion to dismiss under Rule 12(b)(6) or Rule 12(c), the Court must assume that the allegations in the non-moving party's pleadings are true and construe all facts in the light most favorable to the

3

non-moving party. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party," indicate that the dispute "can ... be decided as a matter of law." *O'Ryan v. Dehler Mfg. Co.*, 99 F.Supp.2d 714, 718 (E.D. Va. 2000); *see also A.S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 192 (4th Cir. 1964) (discussing whether "it was proper to enter judgment as a matter of law" under Rule 12(c)).

Motions to dismiss under Rule 12(b)(6) are reviewed under the now familiar standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C.*, 980 F.2d at 952 (citation omitted). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." *Id.*

### III. ANALYSIS

Defendants move to dismiss Plaintiff's complaint because the complaint does not include enough specificity as to the critical elements of distinctiveness and non-functionality. (Def.'s Mem. Supp. Mot. for J. on Pleadings, ECF No. 66, at 1, 10–11.)

Defendants also argue that Plaintiff's complaint is insufficient because it neither provides "documentation" demonstrating "enforceable title to the alleged trade dress" nor alleges an "earlier date of first use." (*Id.* at 2, 12.)

### A. Counts II and III: Federal Trade Dress Infringement and Unfair Competition for Product Packaging and Product Design

*i. Specificity*

To successfully state a claim for trade dress infringement as to both product packaging and design, a party must demonstrate that "(1) its trade dress is primarily non-functional; (2) the alleged infringement creates a likelihood of confusion; and, (3) the trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning." *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 377 (4th Cir. 1999) (citation omitted). Trade dress pertains to the "distinctive design, image, or packaging of a product[,]" "consist[ing] of a product's 'total image and overall appearance, including its size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215 n. 1 (4th Cir. 2003) (citation omitted).

Albeit discernibly skeletal in factual content critical to the trade dress claims, Plaintiff's Complaint satisfies Rule 12(c)'s permissive standard. Plaintiff includes a side-by-side comparison of the respective products' packaging. Plaintiff alleges that their product packaging is "innovative, unique, non-functional, and inherently distinctive." (Compl. at ¶ 36.) Plaintiff maintains that Defendants' use of packaging is "identical (or substantially similar) in size, shape, color, graphics, and look to [Plaintiff's] packaging."

5

(*Id.* at ¶ 37.) This use by Defendants, Plaintiff further alleges, "caus[ed] substantial consumer confusion and dilution of Plaintiff's intellectual property." (*Id.* at ¶ 38). Similarly, Plaintiff states that the Defendants' use of their design trade dress, which is "distinctive [—] identif[ying] products as emanating from Plaintiff [—], and [non-functional]" has "caused confusion amongst customers and retailers as to the origin of [Plaintiff's] products." (*Id.* at ¶ 41.) These facts are sufficient to state a plausible claim for trade dress infringement of Plaintiff's product design and packaging. Most critically, though, each prong of the analysis to determine the merit of Plaintiff's trade dress infringement claims involves an inherently factual review rarely resolved at the motion to dismiss stage.[1] Indeed, in reviewing a motion for judgment on the pleadings the Court is constrained to an examination of the sufficiency of the complaint. To require the Plaintiff to detail every contour of their trade dress claims run afoul of Rule 8's pleading standard.

### ii. Proof of Ownership

Defendants' argument that Plaintiff cannot state a claim because there is no "documentation" demonstrating "enforceable title to the alleged trade dress" is equally unavailing. It is well-settled "that § 43(a) [of the Lanham Act, 15 U.S.C. § 1125 []

---

[1] *See McAirlaids, Inc. v. Kimberly–Clark Corp.*, 756 F.3d 307, 311 (4th Cir. 2014) (noting that "[f]unctionality [] is a question of fact that, like other factual questions, is generally put to a jury."); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997) (explaining that likelihood of confusion is a factual issue dependent on the circumstances of each case and is ill-suited for resolution on a motion to dismiss); Ashley Furniture Indus., 187 F.3d at 377 (the concept of distinctiveness is "heavily fact-dependent"); and *Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 660 (4th Cir. 1996) (listing the factual considerations for vetting secondary meaning as previously delineated in *Perini.*).

protects qualifying unregistered trademarks."[2] *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 341 (4th Cir. 2001) (citation omitted).

    *iii. Date of First Use*

Although the preceding arguments advanced by Defendants are unconvincing, the Court agrees that for Plaintiff to prevail on a claim of trade dress infringement and unfair competition of unregistered trade dress, the Plaintiff must demonstrate an "earlier date of first use."

The Fourth Circuit has not had occasion to speak directly to priority of use as it relates to trade dress infringement.[3] The Fourth Circuit, however, has explained "that trade dress and trademark infringement are very close cousins, both seeking to protect a designation of origin." *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 223 (4th Cir. 2003) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992) (stating that "[t]here is no persuasive reason to apply different analysis to the two")). This explication, coupled with the Fourth Circuit's holding that where there are two competing claims to the use of an unregistered trademark "the first actual use of [the] mark in a genuine commercial transaction determines which party owns the mark[,]" persuades the Court to find that first actual use of trade dress in a genuine commercial transaction determines which party owns unregistered trade dress as well. *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003).

---

[2] For a mark to receive protection, "the mark must be used in commerce and it must be distinctive." *International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 329 F.3d 363 (4th Cir. 2003) (internal citations omitted). The Plaintiff's Complaint adequately alleges both of these requirements. Moreover, as explained in the Court's opinion on the Plaintiff's motion to dismiss, distinctiveness is a fact intensive inquiry.

7

Plaintiff sought protection from the Patent and Trademark Office ("PTO") for their mark on August 9, 2011, successfully obtaining registration on April 17, 2012. Plaintiff's only factual pleading resembling an assertion of first actual use is that Stankunas responded to an inquiry about the similarity of Plaintiff and Defendants' packaging at a trade show in Las Vegas by noting that Defendants copied Plaintiff's packaging in 2013. (*Id.* at ¶ 39.)

To be clear, the time span between the Defendants marketing their products and the registration date of Plaintiff's design patent is not determinative as to the issue of priority, as neither positively identifies the critical date of first use in a commercial transaction. Despite Plaintiff's conclusory allegations, the specific date of commercial first use cannot be determined from the face of the Complaint. Indeed, Plaintiff's Complaint indicates that Defendants have been selling their Beard Heard products since 2010. (Compl. at ¶ 4.) Without evidence that Plaintiff's unregistered trade dress was sold in a genuine commercial transaction prior to Defendants' allegedly "substantially similar" trade dress, the Court cannot reasonably find Defendants' trade dress infringing as a matter of law. Viewed in the light most favorable to the Plaintiff, however, the establishment of a date of first use is simply unclear on the face of the Complaint. Accordingly, the Defendants' motion to dismiss will be denied at this stage of the proceedings.

### B. Count IV: Virginia Common Law Unfair Competition

In addition to federal unfair competition and trade dress infringement claims, Plaintiff alleges violations of their common law trade dress rights and unfair competition

under Virginia Law. To prevail on a Virginia unfair competition claim, Plaintiff must demonstrate both that the mark has acquired secondary meaning and "the resemblance between [the products] is so close that it is likely to confuse a prospective buyer or customer exercising ordinary caution in his dealings." *Rosso & Mastracco, Inc. v. Giant Food Shopping Ctr.*, 200 Va. 159, 164–65, 104 S.E.2d 776, 781 (1958).[4] Additionally, a common law mark's protection is limited "to the locality where the mark is used and to the area of probable expansion." *Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1282 (4th Cir. 1987) (citation omitted). There is no indication from a review of Virginia law on unfair competition that the date of first use is necessarily determinative.

Plaintiff alleges both a geographic scope of their common law trade dress rights and that Defendants' actions are "likely to" and "deliberately calculated to confuse and deceive [] citizens of the Commonwealth of Virginia." (Compl. at ¶66.) Considering, as noted earlier, that specific findings of likelihood of confusion and secondary meaning are factual in nature and typically ill-suited for a motion to dismiss, the Plaintiff has sufficiently alleged a common law claim for trade dress infringement and unfair competition under Virginia Law. While lean, the claim is adequate to pass Rule 12(c) review. Accordingly, the Motion will be denied with respect to Plaintiff's common law claim for trade dress infringement and unfair competition under Virginia Law.

---

[4] Commenting on the Virginia standard, the Fourth Circuit has explained that "trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n. 10 (4th Cir. 1995).

## IV. CONCLUSION

Based on the foregoing analysis, the Motion for Judgment on the Pleadings will be denied. Accordingly, Plaintiff will be allowed to proceed with both their Lanham Act and Virginia trade dress infringement and unfair competition claims, respectively.

Moreover, as Defendants' Motion to Dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) is redundant, the motion and memorandum in support (ECF Nos. 58, 59) will be denied as moot.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Oct 28, 2014
Richmond, Virginia